## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PALEO MEDIA, LLC,

      Plaintiff,

v.

J&L DIVERSIFIED HOLDINGS LLC

and

JEREMY MICHAEL HENDON,

      Defendants.

Civil Action No.

_____

## VERIFIED COMPLAINT

Plaintiff Paleo Media, LLC ("Plaintiff" or "Paleo Media"), by counsel, alleges as follows for its Complaint against Defendants:

## NATURE OF THE SUIT

1.    This is an action for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act,

15 U.S.C. § 1125(d); and for substantial and related claims under Georgia state law against Defendants J&L Diversified Holdings LLC ("J&L") and Jeremy Michael Hendon ("Hendon").

2.　　For more than six years, consumers and followers of the paleo lifestyle have come to associate the PALEO MAGAZINE mark with the latest news, information, and features about the paleo lifestyle. Plaintiff has achieved global recognition of the PALEO MAGAZINE mark through its promotional efforts and its dedication to producing high quality digital and paper publications providing information and products readers need to live healthy, active lives.

3.　　Plaintiff's invaluable rights in the distinctive PALEO MAGAZINE mark have been deliberately infringed through Defendants' unauthorized use of the PALEO MAGAZINE mark and their bad faith registration and use of the paleomagazine.com domain name.

## PARTIES

4.　　Plaintiff Paleo Media, LLC is an Oregon Limited Liability Company with a principal place of business of 505 SW Mill View Way, Suite 200, Bend, Oregon, 97702.

5.     Defendant J&L Diversified Holdings LLC ("J&L") is a Georgia Limited Liability Company with a registered agent address of 123 Robinhood Drive, Cherokee, Woodstock, Georgia, 30188.

6.     Defendant Jeremy Michael Hendon ("Hendon") is an individual and member of Defendant J&L.  Defendant Hendon has used the same address as Defendant J&L, 123 Robinhood Drive, Cherokee, Woodstock, Georgia, 30188, and Defendant Hendon is also the owner of 127 Robinhood Drive, Cherokee, Woodstock, Georgia, 30188.

7.     Upon information and belief, Defendant Hendon is the sole owner, operator, alter-ego, and/or proprietor of Defendant J&L and, if Defendant J&L is a legal entity separate from Defendant Hendon, Defendant Hendon has authorized, assisted, conspired with, or otherwise cooperated with and/or directed Defendant J&L in the acts complained of herein.  Plaintiff is further informed and believes that Defendant Hendon exercises such dominion and control over Defendant J&L, with respect to the activities complained of herein, that Defendant J&L had no separate will of its own and such control by Defendant Hendon was used to commit the wrongs against Plaintiff complained of herein.

## JURISDICTION, VENUE AND JOINDER

8.     This action arises out of Defendants' violation of the Lanham Act, 15 U.S.C. § 1114(1), and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) along with related claims under Georgia state law.

9.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

10.    This Court has personal jurisdiction over Defendants because both Defendants continuously and systematically conduct, transact, and solicit business in this district, and Defendant J&L was incorporated in Georgia and has a registered agent address in this district.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants are subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

12.    Joinder of Defendants J&L and Hendon is proper under Fed. R. Civ. P. 20(a)(2) in that the claims set forth herein arise out of the same series of transactions and the same questions of law are common to each of the Defendants.

{00377046.DOC / }                                          4

## PALEO MEDIA'S RIGHTS

13.     Plaintiff's founder, Cain Credicott, first began preparations to launch PALEO MAGAZINE in 2010.

14.     On February 7, 2011, Mr. Credicott registered the Internet domain name paleomagonline.com.

15.     As early as February 24, 2011, Plaintiff began using the paleomagonline.com domain name to display a website (the "PALEO MAGAZINE Website") allowing consumers to sign-up for information about PALEO MAGAZINE, read information about the paleo lifestyle and healthy eating, and/or purchase t-shirts and other goods bearing the PALEO MAGAZINE Marks.

16.     Since at least as early as February 24, 2011, Paleo Media has continuously used marks that comprise or contain the term PALEO MAGAZINE, along with other word, letter, and/or design elements (collectively the "PALEO MAGAZINE Mark"), in connection with paper and digital publications, webpages in the field of health, fitness, diet, exercise, and lifestyle, and ancillary products and services.

17.     Plaintiff began promotion of the PALEO MAGAZINE Mark and products via Facebook on April 1, 2011, and PALEO MAGAZINE was promoted

at that time by prominent figures in the health and fitness community including Sarah Fragoso, Robb Wolf, and others.

18.    Plaintiff distributed its first issue under the PALEO MAGAZINE Mark in May 2011.

19.    Plaintiff has sold over $5,000,000.00 in products under the PALEO MAGAZINE Mark.

20.    Plaintiff's PALEO MAGAZINE Website averages more than 500,000 unique visitors per year.

21.    Plaintiff has over 15,000 print subscribers for its PALEO MAGAZINE publication, and print publications may also be purchased through Amazon, Barnes & Noble, grocery stores, and various other retail outlets throughout the country.

22.    Plaintiff has developed an active following under the PALEO MAGAZINE Mark on social media, with approximately 280,000 followers on Facebook, 85,000 followers on Instagram, and 67,000 followers in Twitter.

23.    Plaintiff has created a number of collateral brands and products using the PALEO MAGAZINE Mark, including the PALEO MAGAZINE RADIO podcast, a PALEO MAGAZINE READERS' FAVORITES COOKBOOK, a

PALEO MAGAZINE SUMMER COOKBOOK, and annual PALEO MAGAZINE HOLIDAY COOKBOOKS.

24.     Over the past six years, Plaintiff has expended considerable time and effort developing the PALEO MAGAZINE Mark into a brand known and trusted by persons inside and outside the paleo community.

25.     As a result of the sale, distribution, and promotion of its goods and services offered in connection with Plaintiff's PALEO MAGAZINE Mark, Plaintiff has built up highly valuable goodwill in Plaintiff's PALEO MAGAZINE Mark, and the mark has acquired distinctiveness such that Plaintiff is entitled to common law trademark rights in the PALEO MAGAZINE Mark under the Lanham Act.

**DEFENDANTS' INFRINGING ACTIVITIES**

26.     Upon information and belief, Defendant Hendon first registered the paleomagazine.com domain name on May 19, 2011, after the widely promoted launch of Plaintiff's PALEO MAGAZINE Website.

27.     Upon information and belief, Defendant Hendon originally registered the paleomagazine.com domain name using a proxy service, such that Mr. Hendon's identity was replaced with the name "Private Registration" and an address for "Domains by Proxy, Inc."

28.     Upon information and belief, Defendant Hendon has subsequently re-registered the paleomagazine.com domain name using his name and J&L as the registrant on several occasions, including most recently on or about April 23, 2017.

29.     Upon information and belief, sometime after registering the domain name paleomagazine.com, but not earlier than April 2012, Defendants used the domain name to post a website at www.paleomagazine.com (the "Infringing Site"), on which Defendants began to sell diet information and products.

30.     The pages on the Infringing Site have included affiliate links through which visitors could purchase products through Amazon and Thrive Market and, upon information and belief, Defendants received a commission each time a visitor clicked on one of the reference links and/or purchased a product from Amazon or Thrive Market.

31.     Upon information and belief, Defendants in the past sold a magazine at the Infringing Site that now appears to have been discontinued, and Defendants now sell diet and health information and products via the Infringing Site.

32.     Upon information and belief, Defendants do not now, and never have, provided a product or service under the name PALEO MAGAZINE.

33.     Upon information and belief, Defendants do not provide a "magazine," despite their ongoing use of the paleomagazine.com domain name.

34. Upon information and belief, Defendants have used the paleomagazine.com domain name to benefit from consumers seeking Plaintiff's PALEO MAGAZINE and have used the domain name to redirect such consumers to Defendants' products and services sold under such names as "Paleo Living", "Paleo Flourish" and "Paleo Meal Plans".

35. Defendants' infringing use of the PALEO MAGAZINE Mark commenced after Plaintiff's first use of Plaintiff's PALEO MAGAZINE Mark.

36. In September of 2012, Plaintiff contacted Defendant Hendon and advised him that his use of the paleomagazine.com domain name and PALEO MAGAZINE formative social media handles was creating actual consumer confusion with Plaintiff's PALEO MAGAZINE Mark. Defendant Hendon acknowledged the actual consumer confusion being caused.

37. In response to Plaintiff's communication, Defendant Hendon agreed to release the Facebook user name "PaleoMagazine" from his control so that it could be acquired and used by Plaintiff for Plaintiff's PALEO MAGAZINE.

38. Defendant Hendon declined to transfer the paleomagazine.com domain name to Plaintiff in 2012, but he committed to implement steps to prevent consumer confusion with Plaintiff and its PALEO MAGAZINE Mark including branding his business endeavors as "Paleo Living."

39.    Upon information and belief, Defendants have discontinued all use of "Paleo Living," have discontinued all efforts to avoid creating consumer confusion with Plaintiff's PALEO MAGAZINE Mark, and are now benefiting from actual consumer confusion with Plaintiff's PALEO MAGAZINE Mark.

40.    Defendants' infringing use of Plaintiff's PALEO MAGAZINE Mark in connection with diet information is likely to cause confusion as to the source and origin of Defendants' products and services and is likely to cause confusion, or to cause mistake, or to deceive the public and the trade as to the source or sponsorship of those products and services, and to mislead the public into believing that such products and services emanate from, are approved or sponsored by, or are in some way associated or connected with, Plaintiff.

41.    Defendants' use of Plaintiff's PALEO MAGAZINE Mark in connection with Defendants' products and services falsely designates the origin of Defendants' products and services as Plaintiff's, and suggests that Defendants' products and services are in some way connected with, licensed by, authorized by, or approved by Plaintiff.

42.    Defendants' use of Plaintiff's PALEO MAGAZINE Mark is causing actual confusion in the marketplace including, for example, poor reviews of Defendants' products mistakenly attributing the products to Plaintiff, Internet

references to Defendant Hendon as being associated with Plaintiff, social media references to products sold by Defendants as being associated with Plaintiff, consumer complaints directed to Plaintiff about purchases from Defendants, and more.

## FIRST CLAIM FOR RELIEF FOR
## Trademark Infringement (15 U.S.C. § 1114(1))

43.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-42, as though fully set forth herein.

44.    Defendants' activities as described herein are likely to cause confusion, or to cause mistake or to deceive Defendants' customers or potential consumers and the public as to the source or sponsorship of Defendants' products and services.  Consumers are likely to be misled into believing that Defendants' products and services emanate from, or were manufactured by, licensed by, sponsored by, or otherwise affiliated with or approved by, Plaintiff.

45.    Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff and to deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF FOR
### Federal Unfair Competition (15 U.S.C. § 1125(a))

46.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-45, as though fully set forth herein.

47.     Defendants' activities as described herein are likely to cause confusion, mistake, or deception as to the source of Defendant's goods and are likely to create the false impression that Defendants are affiliated with Plaintiff or that their products or services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff.

48.     Defendants' actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### Violation of the Federal
### Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d))

50.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-49, as though fully set forth herein.

{00377046.DOC / }                                    12

51.   Plaintiff's PALEO MAGAZINE Mark is distinctive and was distinctive prior to the time that Defendants registered and/or reregistered the paleomagazine.com domain name.

52.   Defendant Hendon has admitted in conversations with Plaintiff that his various businesses are receiving significant Internet traffic from the paleomagazine.com domain name, and, on information and belief, Defendant Hendon is aware such traffic comes from consumers who are seeking Plaintiff's PALEO MAGAZINE and Plaintiff's PALEO MAGAZINE Website.

53.   The aforesaid acts by Defendants constitute registration (including reregistration), trafficking, and/or use of a domain name that is identical to Plaintiff's PALEO MAGAZINE Mark, with bad faith intent to profit therefrom.

54.   The aforesaid acts by Defendants constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

55.   The aforesaid acts have caused, and are causing, great and irreparable harm to Paleo Media and the public.  Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.  Thus, pursuant to 15 U.S.C. § 1125(d)(1)(C), Paleo Media is entitled to an order transferring the paleomagazine.com domain name registration to Paleo Media.

56.   Pursuant to 15 U.S.C. § 1125(d)(1)(D), Paleo Media is entitled to damages against Defendants for their improper use of the paleomagazine.com domain name.

## FOURTH CLAIM FOR RELIEF FOR
### Deceptive Trade Practices Under
### Georgia State Law (O.C.G.A. § 10-1-370 *et. seq.*)

57.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-56, as though fully set forth herein.

58.   Defendants' activities as described herein are likely to cause confusion or misunderstanding as to the source of Defendants' products and services and are likely to create the false impression that Defendants are affiliated with Plaintiff or that its products or services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff. Defendants' actions constitute a deceptive trade practice in violation of O.C.G.A. § 10-1-373.

59.   Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF FOR
## Unfair Competition Under
## Georgia State Law (O.C.G.A. § 10-1-390 *et. seq.*)

60.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-59, as though fully set forth herein.

61.     Defendants' activities as described herein are likely to cause confusion or misunderstanding as to the source of Defendants' products and services and are likely to create the false impression that Defendants are affiliated with Plaintiff or that its products or services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff. Defendants' actions constitute a deceptive trade practice in violation of O.C.G.A. § 10-1-393.

62.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Paleo Media requests of this Court:

1.     An award of monetary damages, including recovery of Defendants' profits and the damages sustained by Plaintiff, arising from the acts of Defendants complained of herein;

2.      An award of trebled monetary damages and recovery of Plaintiff's

costs and attorneys' fees associated with this action;

3.      The issuance of preliminary and permanent injunctive relief, enjoining

Defendants, and their officers, agents, privies, shareholders, principals, directors,

licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and

assigns, and all those persons in concert or participation with any of them, and any

entity owned or controlled in whole or in part by Defendants, from:

(a)      Using Plaintiff's PALEO MAGAZINE Mark, or any
simulation, reproduction, copy, colorable imitation or confusingly similar
variation of Plaintiff's PALEO MAGAZINE Mark in or as part of a design,
logo, domain name or trademark or service mark, or otherwise using such a
mark in connection with the promotion, advertisement, sale, offering for
sale, manufacture, production or distribution of any product or service;

(b)      Using any false designation of origin or false description
(including, without limitation, any letters or symbols), or performing any
act, which can, or is likely to, lead members of the trade or public to believe
that Defendants are associated with Plaintiff or that any product or service
manufactured, distributed, rendered or sold by Defendants is in any manner
associated or connected with Plaintiff, or is authorized, licensed, sponsored
or otherwise approved by Plaintiff;

(c)      Purchasing Plaintiff's PALEO MAGAZINE Mark in
connection with any sponsored advertising on the Internet or using
Plaintiff's PALEO MAGAZINE Mark in any source code or otherwise using
Plaintiff's PALEO MAGAZINE Mark such that a search for PALEO
MAGAZINE on the Internet will cause any domain name or website of
Defendants to appear in search results;

(d)      Using or registering Plaintiff's PALEO MAGAZINE Mark as
part of any domain name;

{00377046.DOC / }                                    16

    (e)     Engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of Plaintiff's PALEO MAGAZINE Mark;

    (f)     Applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of Plaintiff's PALEO MAGAZINE Mark or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of Plaintiff's PALEO MAGAZINE Mark; and

    (g)     Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above;

4.     An Order directing that Defendants transfer the paleomagazine.com domain name to Plaintiff and execute all necessary documents to effectuate such transfer; and

5.     An award to Plaintiff of such additional or alternative relief, at law or in equity, as the Court may deem to be just and proper.

PALEO MEDIA, LLC

DATED:  July 21, 2017    By:    /s/ Troy R. Covington_____
                                    Troy R. Covington
                                    Georgia Bar No. 190949
                                    Bloom Sugarman, LLP
                                    977 Ponce de Leon Ave., NE
                                    Atlanta, GA  30306
                                    Phone: 404.577.7710
                                    Fax: 404.577.7715
                                    Email: tcovington@bloomsugarman.com

OF COUNSEL:

David E. Weslow (*pro hac vice* application to be filed)
Ari S. Meltzer (*pro hac vice* application to be filed)
Wiley Rein LLP
1776 K Street, N.W.
Washington, DC 20006
Phone: 202.719.7000
Fax: 202.719.7049
Email: dweslow@wileyrein.com
Email: ameltzer@wileyrein.com

*Attorneys for Plaintiff*
*Paleo Media, LLC*

## VERIFICATION

I, Cain Credicott, Founder/Editor-in-Chief of Paleo Media, LLC, declare under penalty

of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the

facts contained in the foregoing Verified Complaint are true and correct.

Cain Credicott

7/20/17

Date